UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 22-CV-62302-SINGHAL/VALLE

JUDITH GRENIER,

    Plaintiff,

v.

TRANS UNION LLC,

    Defendant.
_____

## ORDER ON MOTION TO COMPEL

THIS CAUSE is before the Court upon Plaintiff's Motion to Compel Discovery Responses (ECF No. 35) (the "Motion"). United States District Judge Raag Singhal has referred the case to the undersigned for discovery matters. *See* (ECF No. 12 at 6). The Court has reviewed the Motion, Defendant's Opposition to the Motion (ECF No. 39), and Plaintiff's Reply (ECF No. 40),[1] and being otherwise fully advised in the matter, it is hereby **ORDERED AND ADJUDGED** that the Motion is **GRANTED** for the reasons set forth below.

### I.     BACKGROUND

Plaintiff Judith Grenier ("Plaintiff") filed a Complaint and Demand for Jury Trial against Defendant Trans Union LLC ("Defendant") alleging a violation of the Fair Credit Reporting Act ("FRCA"), 15 U.S.C. § 1681 *et seq. See generally* (ECF No. 1). More specifically, Plaintiff alleges that Defendant failed to establish and/or to follow reasonable procedures to assure maximum possible accuracy in the preparation, maintenance, and dissemination of Plaintiff's consumer report(s). *Id.*

---

[1] Although the undersigned's discovery procedures do not typically allow a reply in discovery disputes, *see* http://www.flsd.uscourts.gov/content/judge-alicia-o-valle, in this case, Plaintiff's Reply (ECF No. 40) was useful to the Court. Therefore, the Court will allow and has considered Plaintiff's Reply in the ruling.

¶ 50; *see also* ¶ 38.  In a nutshell, Plaintiff alleges that she was denied credit based on misinformation Defendant provided to her creditors, in that Defendant incorrectly advised creditors that Plaintiff was "deceased," resulting in denial of credit.[2]  (ECF No. 1 ¶¶ 10-17, 19, 20-27, 30-34).

As part of the litigation, Plaintiff served discovery on Defendant.  At issue in the Motion is Request for Production 3 (seeking all documents that evidence the original source from which Defendant received information that Plaintiff was deceased) and Request for Production 4 (seeking all documents Defendant has received from any other person concerning this litigation, the events at issue, the subject matter, and/or claims contained in the Complaint, or in the Answer, or that are at issue in the case).  (ECF No. 35 at 4) (the "Requests for Production").

At the crux of the Motion is a document in Defendant's possession, referred to as the "Social Security Administration Input File" or the "National Information Services Limited Access Death Master File" (the "Death Master File"), for the deceased non-party.  (ECF Nos. 35 at 2-3, 39 at 1, 2, 4).  According to Plaintiff, the non-party passed away in August 1991, more than thirty years ago.  (ECF No. 35 at 7).  Defendant, however, has refused to produce the Death Master File arguing that the file: (i) is irrelevant; (ii) contains personal identifying information of the deceased non-party; and (iii) cannot be disclosed pursuant to a contract between Defendant and the National Technical Information Service.  (ECF No. 39 at 3).

The instant Motion followed.  Discovery expired on January 31, 2024, with limited discovery permitted through February 9, 2024.  *See* (ECF Nos. 30, 38).

## II.    ANALYSIS

The Federal Rules of Civil Procedure "strongly favor full discovery whenever possible." *Farnsworth v. Procter & Gamble Co.*, 758 F.2d 1545, 1547 (11th Cir. 1985).  Pursuant to Rule

---

[2] This error occurred because Plaintiff's 9-digit Canadian citizenship number is a numerical match to the 9-digit U.S. social security number of a deceased non-party.  (ECF No. 35 at 6-7).

26(b)(1), "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1).   Information within this scope of discovery need not be admissible in evidence to be discoverable.  *Id.*  For the reasons discussed below, Defendant's arguments against producing the Death Master File are overruled.

First, the Death Master File is relevant.  The Death Master File has been described as "the United States Social Security Administration's . . . master list that contains records of reported deaths in the last seventy-five years. [The Death Master File] contains over eighty-six million records of deaths based upon Social Security payment records. The [Death Master File] is updated weekly and contains information on each reported deceased individual, including his or her social security number, name, date of birth, and date of death."  Alyca Riley, *Unclaimed Life Insurance Proceeds and the Duty to Search: Who Is the True Beneficiary?*, 68 Baylor L. Rev. 819, 829 (2016); *see also* (ECF No. 35 at 7) (describing the Death Master File as including the full name, date of birth, date of death, and location data, as well, like zip code, county and/or state).  Here, Plaintiff seeks the Death Master File of a deceased non-party with a U.S. social security number that matches Plaintiff's Canadian citizenship number.  Plaintiff alleges that she was denied credit because Defendant continued to report Plaintiff as "deceased" despite Plaintiff's efforts to correct the information in her credit report.  *See generally* (ECF No. 1); (ECF No. 35 at 7) (describing the issue as a "mixed file"— a credit reporting anomaly wherein consumer credit information belonging to one consumer appears in the credit file of another consumer); *id.* at 8 (Plaintiff's argument that the Death Master File is "inarguable evidence that [Defendant] was on notice that the death record associated with [the non-

party's] 9-digit SSN contained multiple other data points—including a different name, different date of birth, and different location—which should have resulted in [Defendant] concluding that the information in the [non-party's] death record did not belong to Plaintiff."). Against this background, disclosure of the original source from which Defendant received information that resulted in Plaintiff being listed as "deceased" is highly relevant and must be disclosed. *See, e.g., Aslani v. Corelogic Credco, LLC*, No. 13-CV-2635-CC-LTW, 2014 WL 12861199, at *4 (N.D. Ga. Aug. 18, 2014), *report and recommendation adopted*, 2014 WL 12861361 (N.D. Ga. Sept. 8, 2014) (denying a motion to dismiss where it was plausible that there was a systemic problem with the accuracy of the death notations in defendant's reports).

Second, the fact that the Death Master File contains information regarding a non-party does not preclude its production during discovery. In this regard, Defendant argues that producing the Death Master File will reveal personally identifying information of the non-party consumer "without a permissible purpose," in violation of 15 U.S.C. § 1681b. *See* (ECF No. 39 at 2-3). But, other than conclusory arguments, Defendant has failed to demonstrate that the Death Master File is, in fact, a "consumer report" as defined in 15 U.S.C. § 1681a.[3] Moreover, even if the Court were to accept Defendant's argument that the Death Master File is a "consumer report" as defined in the statute, the statute nonetheless allows Defendant to furnish a consumer report in response to this Court's Order. *See* 15 U.S.C. § 1681b(a)(1) (exception permitting disclosure by Court order). Thus, Defendant's argument based on 15 U.S.C. § 1681 is overruled.

Lastly, Defendant's argument that discovery of the Death Master File is precluded by a contractual provision between Defendant and non-party National Technical Information Service is

---

[3] In relevant part, a "consumer report" is "any written, oral, or other communication of any information by a consumer reporting agency bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living which is used or expected to be used or collected in whole or in part for the purpose of serving as a factor in establishing the consumer's eligibility" for credit. 15 U.S.C. § 1681a(d)(1).

4

similarly unavailing. Without more, an agreement between Defendant and a third-party does not shield the Death Master File or the facts contained therein from discovery, particularly where it is relevant to the claims in this case. *See, e.g., Solidda Grp., S.A. v. Sharp Elecs. Corp.*, No. 12-CV-24469, 2013 WL 12091057, at *3 (S.D. Fla. Mar. 19, 2013) (ordering the production of confidential consulting agreements where the information was relevant to the claims and defenses in the case). Further, any confidential or personal identifying information in the Death Master File is governed by the Protective Order already in place in the case. *See* (ECF No. 17, entered on 5/2/2023); *see also In re England/Bahamas*, No. 20-MC-61696, 2021 WL 3270074, at *7 (S.D. Fla. July 30, 2021) (noting that disclosure of confidential information can be cured by protective order).

### III.   CONCLUSION

For the reasons set forth above, Plaintiff's Motion to Compel Discovery Responses (ECF No. 35) is **GRANTED**. By **February 27, 2024**, Defendant must produce to Plaintiff the Death Master File at issue in the Motion.

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Florida on February 13, 2024.

_____
ALICIA O. VALLE
UNITED STATES MAGISTRATE JUDGE

cc: U.S. District Judge Raag Singhal
    All Counsel of Record